UNITED STATES DISTRICT COURT
For the EASTERN DISTRICT OF WISCONSIN

**Eric Beach and Aimee Beach**
14330 Sunrise Ave.
Brookfield, WI 53005

Case No:

Plaintiffs,

-vs-

**JPMorganChase Bank**
270 Park Avenue
New York, NY 10017

Defendant.

## COMPLAINT

Plaintiff by their attorneys Kerkman & Dunn hereby alleges as follows:

1. Plaintiffs Eric and Aimee Beach are citizens of Wisconsin residing at the address shown in the caption hereto.

2. Defendant JPMorganChase Bank is upon information and belief a national bank with its offices located at the address shown in the caption hereto.

### JURISDICTION OF THE COURT AND VENUE:

3. Jurisdiction of the Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681s-2(b) and 15 USC 1681-p.

4. Venue is proper in this District because the plaintiff resides in the District.

### FACTUAL BACKGROUND:

5. Beginning in 2012, Eric and Aimee Beach ('the Beaches') became defendants in a lawsuit brought in Milwaukee County Circuit Court, case number 12 CV 1195.

6. The lawsuit was brought as a foreclosure action, and in that suit JPMorganChase ('Chase') identified itself as a servicer of the loan in question, on behalf of Wells Fargo as a mortgage trustee.

7. The Milwaukee lawsuit was resolved in 2015. The resolution was by stipulation and order.

1

7.  The Milwaukee lawsuit was resolved in 2015. The resolution was by stipulation and order.

8.  The settlement required that the mortgage debt which was the subject of the Milwaukee action be reported to credit reporting agencies as "Metro II coding XH", a coding which meant "account previously in dispute, now resolved."

9.  The settlement further set forth that the Beaches were no longer indebted to Wells Fargo, and allowed Wells Fargo to obtain ownership of the property by consent.

10. Chase was not a party to the settlement, but signed on behalf of Wells Fargo as "attorney-in-fact," demonstrating that Chase was aware of the requirements and provisions of the settlement.

11. Despite the resolution of the Milwaukee case, Chase continued to send billing statements to the Beaches, asserting that the Beaches still owed the mortgage debt and were required to pay Chase.

12. The Beaches did not immediately act on the billing statements because they assumed that it would take a short time for Chase's records to be updated and stop the billing.

13. The Beaches at the time of the resolution of the Milwaukee case had to begin searching for a new home, as they had consented to the foreclosure.

14. The Beaches located a house for purchase, and sought a loan to assist with the purchase. At the time that they did so, their credit reports still indicated that the loan which had been resolved in the Milwaukee action was owed and was in arrears.

15. Because of the credit report showing the Wells Fargo loan with that status, the Beaches could only obtain a loan to purchase their new house by putting it in Aimee's name alone.

16. The Beaches did not want the loan to be solely in Aimee's name.

17. The Beaches also in purchasing the house understood that they would have to make repairs and improvements to the house so that they could make it a home they wanted to live in. As such, and because they were married and did not want the loan only in Aimee's name, the Beaches intended to refinance the new loan as soon as Chase and Wells Fargo cleared their record.

18. By October 2015, the Beaches had completed remodeling enough to increase the value of their new home, and began attempting to refinance the loan they had taken out to purchase their new home.

19. Through September and October 2015, Chase continued to make reports to consumer credit reporting agencies indicating that the Beaches still owed the Wells Fargo loan and that they were delinquent on it.

20. From the date of settlement of the Milwaukee action through October 2015, upon information and belief, Chase made all consumer credit reports regarding the Wells Fargo loan the Beaches had settled. Further upon information and belief at no time did Chase report the loan in the manner required by the stipulation in the Milwaukee action.

21. The Beaches in October 2015 wanted to take advantage of what were then historically low interest rates, and take out a 15-year mortgage to refinance their present home loan. The

2

Beaches also wanted to take out a Home Equity Line of Credit (HELOC) secured by their home to pay off credit cards.

22. On November 11, 2015, the Beaches were informed by their mortgage broker that the Chase reports of debt were preventing them from getting the loan they were seeking. The Beaches were told they "can't close on a loan with the status of this Chase mortgage on your credit report."

23. Because of the state of their consumer credit report, and because the mortgage broker expected any repairs to credit to take 60-90 days and that would be too long to wait to get the mortgage they wanted at rates that were preferable, Mr. and Mrs. Beach were advised to get a loan again in only Mrs. Beach's name.

24. The Beaches were reluctant take a loan again in only Aimee's name. They were reluctant not only because they wanted the loan in both of their names, but because Aimee's credit alone would not let them get the 15-year mortgage they wanted.

25. The best option the Beaches had in November and December 2015 to refinance their house, because of the credit reports made by Chase, was to take on a 30-year loan at 4.25%.

26. The Beaches were informed that absent the Chase report, they would have qualified for a 15-year mortgage at 3.25%.

27. The Beaches could not obtain a HELOC on favorable terms given their reports.

28. The Beaches then sent dispute letters to the three major credit reporting agencies. A copy of those dispute letters are attached as **Exhibits A, B, and C**. The Beaches copied Chase in on each letter. The Beaches intended to seek a HELOC only after the dispute was cleared up.

29. Upon information and belief, each consumer credit reporting agency received the letter directed towards it. Upon information and belief, each consumer credit reporting agency reported to Chase that the Beaches were making the disputes listed in those letters.

30. Chase responded to the disputes in February 2016. Chase asserted that it had directed the consumer reporting agencies to show the account was 'paid in full' by May, 2015.

31. Upon information and belief, Chase did not in fact direct consumer reporting agencies to report the debt as paid in full after receiving notice of the disputes.

32. After receiving the disputes, and upon information and belief after receiving responses from Chase, Equifax reported that it was not required to modify the

3

Beaches' credit report, citing information provided by "Chase Mtg." A copy of this response is attached as **Exhibit D.**

33. After the disputes, Experian and Transunion appeared to delete the account, rather than show it as paid in full.

34. Upon information and belief Chase did not perform a reasonable investigation into the dispute. A reasonable investigation would have resulted in Chase reviewing the settlement document it had signed as attorney-in-fact for Wells Fargo in the Milwaukee action, and would have resulted in Chase directing consumer reporting agencies to report the debt as provided in that settlement, at the least.

35. Upon information and belief, Chase either performed no investigation, or an unreasonable investigation, and said failure to investigate reasonably resulted in Chase either not responding to the consumer reporting agencies, or not responding correctly to the consumer reporting agencies.

36. Because of the failure to properly investigate the dispute, the Beaches were further delayed in getting their HELOC; it took an additional 2-3 months beyond the date the initial application was approved, resulting in the Beaches having to pay higher interest rates on those debts they had intended to refinance in the interim.

37. Further throughout the period of time from the settlement of the Milwaukee case and the filing of disputes with the consumer reporting agencies, the Beaches continued to receive billing statements from Chase asserting that they owed significant amounts of money.

38. Further throughout the period of time from the settlement of the Milwaukee case and the filing of disputes with the consumer reporting agencies, the Beaches received phone calls from Chase demanding payment of costs such as homeowners' insurance, which amounts were not owed to Chase at any time.

39. Chase's conduct in this matter has caused significant amounts of mental stress, emotional distress, and suffering for the Beaches. The Beaches have had to worry that their credit will continue to suffer or they will be re-reported as owing this money. The Beaches have had to worry that they will not obtain a home loan, that they would not be able to refinance their loan, and that they would not be able to consolidate their higher-interest credit cards, harming their finances.

40. The Beaches have as a result of Chase's failure to comply with its legal obligations incurred higher interest on their mortgage loans, and on their credit cards, beyond what they would have had to pay had Chase complied with its legal obligations.

41. The Beaches, as a result of dunning letters and phone calls, inaccurate credit reports, and unreasonable investigations, have suffered additional worry caused

4

by Chase's conduct, and such worry and stress is demonstrated by sleepless nights, increased stress on their marriage, anxiety and difficulty concentrating, and other symptoms such as aggravation of pre-existing medical conditions.

## First Cause of Action:
## Violation of Fair Credit Reporting Act:

42. Reallege and incorporate the foregoing as though set forth fully at this point.

43. Chase had an obligation to conduct a reasonable investigation upon receipt of the Beach's disputes of credit reports.

44. Upon information and belief, Chase failed to conduct any investigation into the dispute or conducted an unreasonable investigation into the dispute.

45. As a result, Chase has violated the Fair Credit Reporting Act.

46. Chase's conduct in asserting that it instructed the reporting agencies to show the account as paid in full when upon information and belief it did not do so, and in continuing to bill the Beaches and dun them for payments before and after receipt of the dispute letters, show that Chase's actions were willful.

47. As a direct and proximate result of the foregoing the Beaches are entitled to compensation for their increased costs while the HELOC was pending, damages for their emotional distress and other suffering, and reasonable attorney's fees.

## Second Cause of Action:
## Tortious Interference With Contract:

48. Reallege and incorporate the foregoing as though set forth fully at this point.

49. At all times material hereto, there existed between the Beaches and Wells Fargo a contract requiring that the mortgage debt alleged in the Milwaukee action be reported as set forth in the settlement documents.

50. At all times material hereto, there existed between the Beaches and their mortgage lenders on their new home purchase, refinance, and HELOC, either contracts or potential contracts for the lending of money secured by real property.

51. Chase interfered with those contracts by failing to accurately report the debt, and by insisting that the Beaches still owed money on the Milwaukee foreclosure debt, and by failing to comply with its obligations as attorney-in-fact for Wells Fargo on the Milwaukee settlement.

5

52. The Beaches have suffered damages by said conduct including but not limited to additional costs of their mortgage and emotional and mental stress and suffering, and are entitled to an award of damages.

### Third Cause of Action:
### Violation of the FDCPA:

53. Reallege and incorporate the foregoing as though set forth fully at this point.

54. At all times material hereto, Chase was upon information and belief either attempting to collect a debt owed to another, or was attempting to collect a debt which it acquired the rights to after it was allegedly in default, or both.

55. The debt Chase was attempting to collect by sending billing statements and making dunning phone calls was, upon information and belief, a debt incurred by the Beaches for personal, family and household purposes, in that it was an alleged mortgage loan for their personal residence.

56. Chase misrepresented the nature and legal status of the debt because at all times after the agreement resolving the Milwaukee circuit court action, the Beaches owed no money to Chase.

57. Chase used unfair and unconscionable means to attempt to collect this debt by sending billing statements when no money was owed, and by using the alleged debt to interfere with the Beaches' attempts to improve their financial situation.

58. The Beaches have suffered emotional distress as a result of Chase's actions in continuing to dun them for this debt and are entitled to an award of actual and statutory damages as well as reasonable attorney's fees.

### Fourth Cause of Action:
### Breach of Contract.

59. Reallege and incorporate the foregoing as though set forth fully at this point.

60. There existed between Chase, as attorney-in-fact for Wells Fargo, and the Beaches, a contract to settle the dispute between Chase, Chase's client, and the Beaches.

61. The Beaches performed all their obligations under the contract.

62. Chase breached the contract, and the Beaches have suffered damages as alleged herein.

### Fifth Cause of Action:
### Misrepresentation (Fraud In The Inducement).

63. Reallege and incorporate the foregoing as though set forth fully at this point.

64. Chase at the time of settling the state-court dispute promised to take certain actions, as alleged herein, if the Beaches agreed to settle the dispute.

65. Chase at the time of making the representations had no present intention of actually taking those actions; this is evidenced by the fact that Chase made no effort to take said actions until prompted to do so by letters from Beach many months later; and further by the fact that even then Chase may not have taken those actions; and by other evidence as will be adduced.

66. Chase made the promises of future performance either intentionally, knowing it would not take the actions, or negligently, not taking reasonable care to ensure that it would in the future perform said actions.

67. The Beaches relied on said representations to their detriment as evidenced by the fact that (among other evidence as will be adduced) they signed the agreement, moved out of their house and bought a new house planning to redo the financing once Chase complied with its promises of future performance.

68. The Beaches have thus lost their property, abandoned their claims, and had increased costs of purchasing their house and increased credit costs as a result of Chase's actions alleged herein, and are entitled to compensation including but not limited to either voiding the transaction or an award of damages.

**Wherefore** the Beaches request that the Court award them such damages and relief as may be just and equitable.

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON THIS MATTER.

Dated: July 20, 2016.   **Kerkman & Dunn**

/s/Briane F. Pagel Jr.
Briane F. Pagel, Jr.
Attorney for Plaintiff
State Bar No: 1025514

757 N. Broadway, #300
Milwaukee, WI 53202
(414) 277-8200/fax: 277-0100
bpagel@kerkmandunn.com